HOME FEDERAL SAVINGS AND LOAN
ASSOCIATION OF ALGONA,
IOWA, Appellee,

v.

INSURANCE DEPARTMENT OF IOWA
and Herbert W. Anderson, Commission-
er of Insurance, Appellants.

No. 77–1330.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 17, 1977.

Decided Feb. 21, 1978.

Lorna Lawhead Williams, Asst. Atty. Gen., Des Moines, Iowa (argued), Richard C. Turner, Atty. Gen., and Curtis A. Yocom, Jr., Asst. Atty. Gen., Des Moines, Iowa, on brief, for appellants.

Ross H. Sidney, Des Moines, Iowa (argued), and Stephen D. Hardy, Des Moines, Iowa, on brief, for appellee.

Daniel J. Goldberg, Acting Gen. Counsel, Harold B. Shore, Associate Gen. Counsel, Harvey Simon, Senior Trial Atty., and Steven J. Toll, Atty., Washington, D. C., on brief, for amicus curiae, Federal Home Loan Bank Board.

Before WEBSTER and HENLEY, Circuit Judges, and SMITH,* Senior District Judge.

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

TALBOT SMITH, Senior District Judge.

The matter before us is an appeal, upon certification, of an interlocutory order.[1] Upon challenge to original jurisdiction, we find that the District Court is without such jurisdiction and we reverse the judgment below. The case is remanded with directions to dismiss the complaint.

The facts are not complex. The parties involved are the Home Federal Savings and Loan Association of Algona, Iowa (hereafter Home Federal), appellee, and the Insurance Department of Iowa and Herbert W. Anderson, Commissioner of Insurance (hereafter Commissioner), appellants.

In April, 1976, the Commissioner commenced an administrative proceeding against Home Federal to determine whether it had practiced the coercion of debtors in violation of Iowa law and was thus subject to appropriate action, including levy of a fine. The coercion alleged was the conditioning of the extension of credit by Federal on the sale of insurance, in short, by maintaining a tie-in arrangement between loans and the sale of insurance, in violation of Chapter 507B[2] of the Code of Iowa.

Home Federal moved to dismiss. It contended before the Commissioner that it was not permitted by its charter to engage in the insurance business, and that it did not do so. Moreover, it argued that as a federal savings and loan association chartered by the Federal Home Loan Bank Board pursuant to the Home Owners' Loan Act,[3] it was not subject to Iowa's insurance law, but, on the contrary, that federal law has preempted State regulation of the operation of federal savings and loan institutions.[4] Home Federal also claimed that application of State law to it was in violation of Art. VI of the Federal Constitution, and was not authorized by 15 U.S.C. § 1011 et seq., the McCarran-Ferguson Act.[5] The Commissioner, however, denied Home Federal's motion, holding that it was engaged in the business of insurance for the purposes of Iowa Code §§ 507B.3[6] and 507B.5 (1975),[7] that it was subject to Iowa's insurance law, and that the application of Iowa's law was

---

1. 28 U.S.C. § 1292(b): Fed.R.App.P. 5.

2. Iowa Code § 507B.5 (1975) prohibits tie-in arrangements between loans and the sales of insurance:
   § 507B.5
   1. No person may do any of the following:
   a. Require, as a condition precedent to the lending of money or extension of credit, or any renewal thereof, that the person to whom such money or credit is extended or whose obligation the creditor is to acquire or finance, negotiate any policy or contract of insurance, through a particular insurer or group of insurers or agent or broker or group of agents or brokers.

3. The Home Owners' Loan Act of 1933, 12 U.S.C. § 1461 et seq. established the three-member Federal Home Loan Bank Board, which "is authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as 'Federal Savings and Loan Associations,' and to issue charters therefor." 12 U.S.C. § 1464(a).

4. "The cases are legion which hold that this preemptive delegation of authority to the Board extends to the internal operations of these institutions, precluding any regulation or interference by the states." *Rettig v. Arlington*

*Heights Federal Savings and Loan Ass'n,* 405 F.Supp. 819, 823 (N.D.Ill.1975).

5. The McCarran-Ferguson Act, 15 U.S.C. §§ 1011 and 1012, provides in part:
   § 1011. Congress declares that the continued regulation . . . by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation . . . of such business by the several States.
   § 1012.
   (a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation . . . of such business.
   (b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . .

6. Iowa Code § 507B.3 (1975) authorizes the Commissioner to "examine and investigate into the affairs of every person engaged in the business of insurance in this state in order to determine whether such person has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice prohibited by this section."

7. Iowa Code § 507B.5, see n.2, *supra.*

not in violation of Article VI of the Constitution.

Home Federal thereupon filed two petitions for judicial review, one in the Kossuth County, Iowa, District Court,[8] the other, now before us, in the United States District Court. The federal petition alleged, in substantial part, the facts above set forth, asserted federal preemption in the premises, denied that Home Federal was engaged in the "business of insurance," and sought both injunctive and declaratory relief, including termination of the state action. Federal court subject-matter jurisdiction was asserted under 28 U.S.C. § 1331(a).[9] Subsequent to answer, the parties by stipulation jointly filed a request for a hearing. After argument the District Court[10] ruled that

> staying its jurisdiction and holding the case in abeyance, the Court will forego further action until the Bank Board makes an initial ruling as to whether federal regulations or state insurance law, pursuant to the McCarran-Ferguson Act, govern petitioner's rights and liabilities.
>
>     \*    \*    \*    \*    \*    \*
>
> It is Ordered, Adjudged and Decreed that while this Court has jurisdiction to act upon or review the above-entitled case, it will stay its jurisdiction and hold this case in abeyance pending the initiation and conclusion of the appropriate

administrative proceeding before the Federal Home Loan Bank Board.[11]

The Commissioner requested, and was granted an appeal from "parts of the ruling" of March 17, hereinabove quoted. Appellant-Commissioner identifies these parts as follows: (1) Did the court properly find that it did have jurisdiction in this matter? and (2) Can the court invoke the doctrine of primary jurisdiction where the issues are legal and not factual in nature? Our ruling on the first issue disposes of both.

■ The Commissioner's challenge to original jurisdiction was initially raised in the answer, and later amplified in the Commissioner's reply brief dated November 8, 1977.[12] He argues to us that Home Federal's "Petition for Judicial Review and Order or in the Alternative Application for Declaratory Judgment does not show on its face that the action arises under the Constitution, laws, or treaties of the United States of America."[13]

■ In the interpretation of the "arising under" clause we start with the well-settled principle that for federal jurisdiction over federal question litigation such question must appear in the plaintiff's "well-pleaded complaint."

This Court has repeatedly held that, in order for a claim to arise "under the Constitution, laws, or treaties of the United States," "a right or immunity created by the Constitution or laws of the

---

8. The disposition of this petition is not in the record before us, although the Commissioner's reply brief (p. 1) states that the State case has already been argued and submitted, and awaits decision.

9. 28 U.S.C. § 1331(a) provides as follows:

> The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States except that no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.

10. The Honorable William C. Hanson, United States District Judge for the Northern District of Iowa.

11. *Home Federal Savings and Loan Ass'n v. Insurance Dep't of Iowa,* 428 F.Supp. 992 (N.D. Iowa, 1977).

12. We note that this reply brief, filed on November 10, 1977, was not before the trial court on the date of the filing of its order, March 17, 1977, although, of course, the parties litigant may raise the question of subject matter jurisdiction at any time, or the court may raise it *sua sponte. Clark v. Paul Gray, Inc.,* 306 U.S. 583, 588, 59 S.Ct. 744, 83 L.Ed. 1001 (1939); Fed.R.Civ.P. 12(h)(3).

13. *See* 13 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3562 "The Meaning of 'Arising Under'" (1975).

United States must be an element, and an essential one, of the plaintiff's cause of action." *Gully v. First National Bank,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936). The federal questions "must be disclosed upon the face of the complaint, unaided by the answer." Moreover, "the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense." *Gully, supra,* at 113, 57 S.Ct. at 98.[14]

*Phillips Petroleum Co. v. Texaco, Inc.,* 415 U.S. 125, 127–128, 94 S.Ct. 1002, 1003–04, 39 L.Ed.2d 209 (1974). (Citations omitted; footnote ours.)

Thus it is not enough to ground federal jurisdiction that Home Federal is chartered by the Home Owners' Loan Act,[15] or that it raises a federal question, such as, in this context, federal preemption, in defense to the state action. Nor would it suffice should a pleader, anxious to get into the federal court, anticipate the defendant's probable federal question defense. *Phillips Petroleum Co., supra.* In the case before us, it is clear, the federal court would not have had original jurisdiction over the State's charges against Home Federal for violation of Iowa's insurance code had the proceedings initially taken that route rather than the administrative. In either event the action, whatever its procedural cast, rests primarily upon Iowa law.

The case before us represents a procedural variation from those heretofore considered, in that here, although the declaratory-plaintiff's petition clearly states its claimed bases for federal jurisdiction, the allegations remain defensive in nature, merely reiterating the defenses heretofore made of preemption and lack of doing business. As such they will not suffice for federal question jurisdiction. They started as defensive allegations and despite "artful pleading," they so remain. A similar procedural situation was involved in the case of *Chandler v. O'Bryan,* 445 F.2d 1045 (10th Cir. 1971).[16]

The essence of this phase of the complex *Chandler* case involved a libel charge. United States District Judge Chandler had accused plaintiff O'Bryan of bribing judges of the Oklahoma Supreme Court. O'Bryan thereupon brought a libel action in Oklahoma state court. Judge Chandler removed the action to the federal district court but that court remanded the case to the state court for lack of a federal question. Chandler raised a judicial immunity defense. There is no question that such a defense arises under Federal law. After a verdict for O'Bryan was returned in the state court, Chandler filed a declaratory judgment action in the federal court seeking to have the state libel judgment enjoined and expunged, alleging his federal judicial immunity claim. The district court granted relief but the Tenth Circuit reversed.

**14.** See also *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 673, 70 S.Ct. 876, 880, 94 L.Ed. 1194 (1950):

To be observant of these restrictions is not to indulge in formalism or sterile technicality. It would turn into the federal courts a vast current of litigation indubitably arising under State law, in the sense that the right to be vindicated was State-created, if a suit for a declaration of rights could be brought into the federal courts merely because an anticipated defense derived from federal law. Not only would this unduly swell the volume of litigation in the District Courts but it would also embarrass those courts—and this Court on potential review—in that matters of local law may often be involved, and the District Courts may either have to decide doubtful questions of State law or hold cases pending disposition of such State issues by State courts. To sanction suits for declaratory relief as within the jurisdiction of the District Courts merely because, as in this case, artful pleading anticipates a defense based on federal law would contravene the whole trend of jurisdictional legislation by Congress, disregard the effective functioning of the federal judicial system and distort the limited procedural purpose of the Declaratory Judgment Act. See *Developments in the Law—Declaratory Judgments*—1941–1949, 62 Harv.L. Rev. 787, 802–03 (1949).

**15.** *Gully v. First Nat. Bank,* 299 U.S. 109, 113, 57 S.Ct. 96, 98, 81 L.Ed. 70 (1926).

**16.** Sitting by designation here were Eighth Circuit Judges Van Oosterhout, Mehaffy and Gibson.

The circuit court held that Chandler was seeking a separate federal adjudication of a matter which was in reality in the nature of a defense to the state court libel action, which was based solely[17] on state libel law and raised no federal question itself. The court, quoting *Public Service Commission of Utah v. Wycoff Co.,* 344 U.S. 237, at 248, 73 S.Ct. 236, 97 L.Ed. 291 (1952), held in part, that

> "Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, *it is the character of the threatened action, and not of the defense,* which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, *if that right is in reality in the nature of a defense to a threatened cause of action.* Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law." *Chandler v. O'Bryan, supra,* 445 F.2d at 1055–56 (emphasis as in *Chandler*), citing also *Skelly Oil Co. v.*

*Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); *First Federal S. & L. Assoc. v. McReynolds,* 297 F.Supp. 1159 (W.D.Ky.1969); *Government Employees Ins. Co. v. LeBleu,* 272 F.Supp. 421 (E.D.La.1967).

The ruling is directly applicable to the case before us in that the Commissioner's proceeding against Home Federal was based solely upon alleged violations of Iowa's insurance law and raised no federal question. Home Federal's allegations of preemption and failure to engage in the "business of insurance," asserted in its federal petition, actually are in the nature of defenses to the Commissioner's charges. Hence they will not suffice for federal question jurisdiction here. The case is basically simply an alleged violation of state law. It is not a federal case and is not converted to one by Home Federal's defenses to the state's basic allegations.

Under the view we have taken of the case, we do not reach questions presented going to the merits. We find a lack of jurisdiction over the subject matter.

The judgment appealed from is reversed and the case remanded with directions to dismiss the complaint.

**17.** "[T]he operation of the Declaratory Judgment Act is procedural only." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,* 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617. Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction. When concerned as we are with the power of the inferior federal courts to entertain litigation within the restricted area to which the Constitution and Acts of Congress confine them, "jurisdiction" means the kinds of issues which give right of entrance to federal courts. Jurisdiction in this sense was not altered by the Declaratory Judgment Act. Prior to that Act, a federal court would entertain a suit on a contract only if the plaintiff asked for an immediately enforceable remedy like money damages or an injunction, but such relief could only be given if the requisites of jurisdiction, in the sense of a federal right or diversity, provided foundation for resort to the federal courts. The Declaratory Judgment Act allowed relief to be given by way of recognizing the plaintiff's right even though no immediate enforcement of it was asked. But the requirements of jurisdiction—the limited subject matters which alone Congress had authorized the District Courts to adjudicate—were not impliedly repealed or modified.

*Skelly Oil Co. v. Phillips Co., supra,* n.14, 339 U.S. at 671–72, 70 S.Ct. at 879.

*See also Rath Packing Co. v. Becker,* 530 F.2d 1295 (9th Cir. 1975), *aff'd sub nom. Jones v. Rath Packing Co.,* 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977).