579 F.2d 1112
 The STATE OF NORTH DAKOTA, doing business as the Bank of
North Dakota, Appellant,
v.
MERCHANTS NATIONAL BANK AND TRUST COMPANY, FARGO, NORTH
DAKOTA, Red River National Bank and Trust Company, Grand
Forks, North Dakota, Jamestown National Bank, Jamestown,
North Dakota, Union National Bank, Minot, North Dakota,
Wahpeton National Bank, Wahpeton, North Dakota and John
Heimann, Comptroller of the Currency, Appellees.
 No. 77-1902.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 18, 1978.
Decided July 7, 1978.
 
 Peter B. Work, Jones, Day, Reavis & Pogue, Washington, D. C., argued, for appellant; James F. Bell and Michael J. Petrina, Jr., Washington, D. C., and Maurice E. Cook, Sp. Asst. Atty. Gen., Bismarck, N. D., on brief.
 David Ranheim, Minneapolis, Minn., argued, for appellee, banks; Paul J. Scheerer of Dorsey, Windhorst, Hannaford, Whitney & Halladay, Minneapolis, Minn., Frank J. Magill, Fargo, N. D., on brief.
 Linda Jan S. Pack, Atty., App. Sec., Civ. Div., Dept. of Justice, Washington, D. C., argued, for appellee, Comptroller; Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., James R. Britton, U.S.Atty., Fargo, N. D., and Ronald R. Glancz, Atty., Washington, D. C., on brief.
 Before GIBSON, Chief Judge, HENLEY, Circuit Judge and SCHATZ, District Judge.*
 GIBSON, Chief Judge.
 
 
 1
 This case involves a challenge to the actions of the appellee national banks in changing their names and the actions of the Comptroller of the Currency (Comptroller) in approving the new names. The State of North Dakota, doing business as the Bank of North Dakota (State Bank), brought this action in the District Court for review of the Comptroller's administrative action approving the name change. The State Bank also contends that it challenged the name changes under the common law of unfair competition. Because of the unusual posture of the case we affirm the District Court's[1] order upholding the Comptroller's decision but remand for further proceedings the claim based on North Dakota common law.
 
 
 2
 On September 7, 1976, the appellee banks applied to the Comptroller for approval of their name changes under § 30 of the National Bank Act (12 U.S.C. § 30).[2] The five banks are affiliated with First Bank System, Inc., a registered bank holding company headquartered in Minneapolis, Minnesota. The banks and the proposed name changes were as follows:
 
 
 3
 (a) Merchants National Bank and Trust Company of Fargo: requested name change First Bank of North Dakota (N.A.) Fargo;
 
 
 4
 (b) Red River National Bank and Trust Company of Grand Forks: requested name change First Bank of North Dakota (N.A.) Grand Forks;
 
 
 5
 (c) Jamestown National Bank: requested name change First Bank of North Dakota (N.A.) Jamestown;
 
 
 6
 (d) Union National Bank in Minot: requested name change First Bank of North Dakota (N.A.) Minot;
 
 
 7
 (e) Wahpeton National Bank: requested name change First Bank of North Dakota (N.A.) Wahpeton.
 
 
 8
 The State Bank opposed the applications because of the similarity between its name, "Bank of North Dakota," and the dominant part of each of the proposed names, "First Bank of North Dakota." Other parties also opposed the name changes before the Comptroller.
 
 
 9
 The Comptroller finally approved the name changes on February 11, 1977. The present case was then filed. A preliminary injunction was denied on May 4, 1977, and the changes became effective on May 5, 1977. Cross motions for summary judgment were filed and on September 30, 1977, the District Court granted the appellee banks' and Comptroller's motions for summary judgment and dismissed the State Bank's claim.
 
 
 10
 In this appeal the State Bank does not challenge the Comptroller's approval of the new names or the District Court's order upholding the Comptroller. Before this court, the counsel for the State Bank began his argument by stating: "I wish to emphasize that in this appeal we are not challenging the Comptroller's administrative approval of that name under the National Bank Act. Furthermore, we are not challenging the District Court's affirmation of that approval." The State Bank is seeking review of the denial of injunctive relief against the appellee banks on the basis that relief should have been granted under state law principles of unfair competition. On this issue the positions taken by the parties have resulted in resolution of the case being elusive.
 
 
 11
 The State Bank contends that a pendent claim under state law was stated in its complaint. It also argues that this unfair competition claim was not decided by the Comptroller because he lacked jurisdiction over it, and was not considered by the District Court in affirming the Comptroller's approval. The State Bank asks us to decide the merits of the issue on the basis of the similarity between the names, or remand the case for further proceedings in the District Court.
 
 
 12
 The Comptroller's approval is no longer challenged and no relief is now sought against him; thus he appears to have no continuing interest in this appeal. However, he has appeared as an appellee and we have considered the matters he raises. The Comptroller concedes that there has been no "direct adjudication" of the state law claim. He suggests that there may be a jurisdictional question based on federal preemption of regulation of national bank names. However, rather than citing any authority supporting a lack of jurisdiction, he also urges us to consider the merits of the state law claim. He contends that the common law claim is "utterly without merit."
 
 
 13
 The appellee banks urge that the Comptroller and the District Court considered and decided the issues now raised by the State Bank. They contend this by claiming that the standard used by the Comptroller[3] is identical to the applicable standard under North Dakota law.[4] According to the appellee banks, the matter has been resolved in their favor by the Comptroller and the District Court.
 
 
 14
 In considering the parties' contentions we must first observe that the State Bank's complaint filed in the District Court only obliquely raised any issue of state common law. In fact, we would be inclined to hold that the matter had not been properly presented to the District Court if the appellee banks did not strenuously contend that the claim had been presented to and decided by the District Court. In this unusual situation, we conclude that a cause of action may have been stated under the common law of North Dakota. We think this common law issue is not embraced within the Comptroller's jurisdiction.
 
 
 15
 It is necessary to examine the District Court's memorandum and order to determine whether it decided the common law issue. That memorandum carefully considered all issues regarding its review of the Comptroller's action. However, it is silent on the alleged common law unfair competition claim. We are satisfied that the District Court was referring to federal and not state law when it concluded that the Comptroller's decision had not been shown to be "not in accordance with the law."
 
 
 16
 Apparently the Supreme Court of North Dakota has not ruled on any cases involving alleged unfair competition among banks arising from the choice of names. The State Bank and the appellee banks claim to find support for their positions in Standard Oil Co. v. Standard Oil Co. of North Dakota, 123 F.Supp. 227 (D.N.D.1954), where the defendant attempted to appropriate to itself the goodwill built up by the plaintiff Standard Oil Co. In that case, Chief District Judge Vogel, now a Senior United States Circuit Judge of this court, enjoined the defendant from using the words "Standard," "Standard Oil," or "Standard Oil Company" as part of its corporate name or as a trademark. As could be argued in this case, Judge Vogel there noted: "By mere comparison alone, it is obvious that the names of plaintiff and of the corporate defendant are confusingly similar." 123 F.Supp. at 228.
 
 
 17
 In Standard Oil, Judge Vogel also incisively noted:The tenacity with which defendants urge their right to use a corporate name which could have acquired no value insofar as their own use of the name is concerned justifies an inference that defendants recognize that the name "Standard Oil Company" has a value which has been derived from some other source, to-wit: The reputation which the Standard Oil Company, operating in this territory, has acquired in fifty years of business operations. The defendants disclaim an intent to appropriate anything of value belonging to another corporation but their actions belie their words.
 
 
 18
 123 F.Supp. at 229. A similar inference could be drawn from the actions of appellee banks. They justify the use of the words "First Bank" by asserting a business interest in having all banks affiliated with the First Bank System, Inc. uniformly identifiable by the public. However, that interest perhaps could be met while using a local geographic term in the dominant part of the name rather than each bank using "First Bank of North Dakota."[5] Furthermore, "First Bank of North Dakota" may be generically and historically misleading in that appellee banks were not the first banks in North Dakota. Although appellee banks seem open to the charge that they are attempting to appropriate the name designation long ago established by the State Bank of North Dakota, this issue is for resolution by the trial court.
 
 
 19
 Some jurisdictions apparently permit greater similarity among bank names than is permitted among other business entities. See, e. g., National Bank in North Kansas City v. Bank of North Kansas City, 238 Mo.App. 19, 29, 172 S.W.2d 967, 971 (1943). Whether that is also the law in North Dakota is a question that should first be addressed by the District Court.
 
 
 20
 Generally we do not decide issues that were not passed upon by the trial court. Here the uncertain state of North Dakota law makes us doubly reluctant to consider the merits of an issue not considered by the District Court. It is especially inappropriate for us to do so in view of the fact that the District Court's findings of fact were made in a summary judgment context and at a time when that court was only reviewing an administrative decision of the Comptroller.
 
 
 21
 We express no views on the jurisdictional question of preemption of state law by the National Bank Act. That issue has only been mentioned in passing by the Comptroller. We have examined Traverse City State Bank v. Empire National Bank, 228 F.Supp. 984 (W.D.Mich.1964). Dicta in that case support a denial of jurisdiction. However, the actual issues in that case differ significantly from those here posited by the State Bank.
 
 
 22
 In conclusion, we affirm the District Court's summary judgment upholding the Comptroller's approval of the name changes. The dismissal of all claims against the Comptroller is also affirmed. We remand the common law claim to the District Court for further proceedings consistent with this opinion. Unless independent jurisdictional grounds are shown, the District Court may determine whether it should hear the case as within its pendent jurisdiction or dismiss without prejudice to relief being sought in state courts.
 
 
 23
 Affirmed in part and remanded.
 
 
 
 *
 The Honorable Albert G. Schatz, United States District Judge, District of Nebraska, sitting by designation
 
 
 [1]
 The Honorable Paul Benson, Chief Judge, United States District Court for the District of North Dakota
 
 
 [2]
 12 U.S.C. § 30 provides:
 Change of name or location
 Any national banking association, with the approval of the Comptroller of the Currency, may change its name or change the location of the main office of such association within the limits of the city, town, or village in which it is situated. Any national banking association, with the approval of the Comptroller of the Currency, may change the location of the main office of such association to any other location outside the limits of the city, town, or village in which it is located, but not more than thirty miles distant, by the vote of shareholders owning two-thirds of the stock of such association. A duly authenticated notice of the vote and of the new name or location selected shall be sent to the Comptroller of the Currency; but no change of name or location shall be valid until the Comptroller shall have issued his certificate of approval of the same.
 
 
 [3]
 All parties agree that the Comptroller used the standard stated in 41 Fed.Reg. 47964, 47968. That standard provides in pertinent part:
 The Office of the Comptroller of the Currency (OCC) considers an application for change in corporate title to be Primarily a business decision of the applicant. Such applications will be approved subject to the following limitations.
 The proposed title must be sufficiently dissimilar from any other existing or proposed unaffiliated bank or depository financial institution, so as not to substantially confuse or mislead the public in a relevant market. (Emphasis added.)
 
 
 [4]
 As will appear from the text, Infra, the relevant standard under North Dakota law is not readily discernible. The State Bank and the appellee banks seem to view Standard Oil Co. v. Standard Oil Co. of North Dakota, 123 F.Supp. 227 (D.N.D.1954) as enunciating important principles of North Dakota law possibly applicable here. That case is more fully discussed in the text, Infra
 
 
 [5]
 Apparently the Comptroller's view that his approval should generally be given to these "business decisions" precluded any intensive exploration of possible alternate names. See note 3, Supra. Perhaps a court applying state law would consider such alternatives in balancing the equities in a suit seeking injunctive relief