466 F.Supp. 953 (1979)
The STATE OF NORTH DAKOTA, doing business as the Bank of North Dakota, Plaintiff,
v.
MERCHANTS NATIONAL BANK AND TRUST COMPANY, FARGO, NORTH DAKOTA, Red River National Bank and Trust Company, Grand Forks, North Dakota, Jamestown National Bank, Jamestown, North Dakota, Wahpeton National Bank, Wahpeton, North Dakota, Defendants.
Civ. No. A77-3017.
United States District Court, D. North Dakota, Southeastern Division.
March 21, 1979.
Maurice E. Cook, Sp. Asst. Atty. Gen. & Gen. Counsel for Bank of North Dakota, Bismarck, N. D., for plaintiff.
Frank J. Magill, Nilles, Hansen, Selbo, Magill & Davies, Ltd., Fargo, N. D., (David A. Ranheim and Paul J. Scheerer, Dorsey, Marquart, Windhorst, West & Halladay, Minneapolis, Minn., of counsel), for defendant Banks.
James S. Britton, U. S. Atty., Fargo, N. D. (Dorothy S. Kulig and Marilyn Britwar, Comptroller of Currency, Director of Litigation, Washington, D. C., of counsel), for Comptroller.

ORDER
BENSON, Chief Judge.
In 1976 defendant banks in this action applied to the Comptroller of the Currency for approval of their proposed name changes, pursuant to 12 U.S.C. § 30. The Comptroller approved the name changes on February 11, 1977. This action was filed on March 14, 1977, naming as defendants the banks applying for a change of name and the Comptroller. Plaintiff moved for a preliminary injunction. After oral argument before the court the motion was denied on May 5, 1977. The name change went into effect on the same day. Cross motions for summary judgment were filed and on September 30, 1977 the court granted defendants' motion for summary judgment and dismissed plaintiff's claim.[1]
Plaintiff appealed from the ruling of this court. 579 F.2d 1112 (8th Cir. 1978). On appeal, plaintiff did not challenge the Comptroller's approval of the name change or this court's order upholding the Comptroller. Rather, plaintiff contended that it was seeking a review of this court's denial of injunctive relief against defendants on the ground that such relief should have been granted under state law principles of unfair competition. It was argued by both plaintiff and defendants that the Comptroller and this court had considered the state law issues. The Court of Appeals ruled that a cause of action under state law may have been stated in the complaint as a pendent state claim, but that the memorandum *954 granting defendants' motion for summary judgment was silent on the state claim and had dealt only with federal law. The Court of Appeals affirmed this court's order of summary judgment upholding the Comptroller's approval of the name changes and the dismissal of all claims against the Comptroller. The case was remanded for consideration of the state law claims. 579 F.2d at 1115.
The state common law claim asserted by plaintiff is that by using the phrase "First Bank of North Dakota" in their names, defendants have infringed on plaintiff's name, the Bank of North Dakota, in violation of the North Dakota common law of unfair competition.
Defendants have moved to dismiss, contending that the question of name changes of national banks is pre-empted by federal law and that a state created cause of action for name infringement cannot lie against a national bank whose name change has been lawfully approved by the Comptroller of the Currency.
The Comptroller has filed a brief as amicus curiae as all the defendants in this action are national banks. If there is federal pre-emption in the area of name changes of national banks, a state cause of action will not lie and the motion to dismiss must be granted.
Name changes by national banks are governed by 12 U.S.C. § 30, which provides in relevant part as follows:
Any national banking association, with the approval of the Comptroller of the Currency, may change its name or change the location of the main office of such association within the limits of the city, town, or village in which it is situated.
. . .
The question of whether there is federal pre-emption of name changes of national banks is apparently one of first impression. Several cases have dealt with the change of location of main offices of national banks, an area also regulated by § 30, but no reported case has treated the name change issue. See Ramapo Bank v. Camp, 425 F.2d 333 (3d Cir.), cert. denied, 400 U.S. 828, 91 S.Ct. 57, 27 L.Ed.2d 58 (1970); Marion Nat. Bank of Marion v. Van Buren Bank, 418 F.2d 121 (7th Cir. 1969); Traverse City State Bank v. Empire Nat. Bank, 228 F.Supp. 984 (W.D.Mich.1964).
Congress, in enacting the National Bank Act, 12 U.S.C., did not specifically pre-empt the regulation of national banks. But the lack of an express provision of pre-emption in the Act is not determinative of the issue of whether there is in fact pre-emption. City of Burbank v. Lockheed Air Terminal, Inc., 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973). The intention of Congress to pre-empt a field, assuming it has the power to do so,[2] may be evidenced in several ways:
The scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the State to supplement it. Or the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. Likewise, the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose. Or the state policy may produce a result inconsistent with the objective of the federal statute.
Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947) (citations omitted).
The National Bank Act is a comprehensive code creating and regulating the national banks of the United States, "constituting by itself a complete system for the establishment and government of national banks, . . .." Cook County Nat. Bank v. United States, 107 U.S. 445, 448, 2 S.Ct. 561, 564, 27 L.Ed. 537 (1882).
National banks are instrumentalities of the federal government, created for a *955 public purpose, and as such necessarily subject to the paramount authority of the United States. It follows that an attempt, by a State, to define their duties or control the conduct of their affairs is absolutely void, wherever such attempt and exercise of authority conflicts with the laws of the United States, and either frustrates the purpose of the national legislation or impairs the efficiency of these agencies of the Federal government to discharge the duties, for the performance of which they were created.
Davis v. Elmira Savings Bank, 161 U.S. 275, 283, 16 S.Ct. 502, 503, 40 L.Ed. 700 (1896). See also First Nat. Bank in Plant City v. Dickinson, 396 U.S. 122, 131, 90 S.Ct. 337, 24 L.Ed.2d 312 (1969); Easton v. Iowa, 188 U.S. 220, 230, 23 S.Ct. 288, 47 L.Ed. 452 (1903); Farmers and Mechanics' Bank v. Dearing, 91 U.S. 29, 34, 23 L.Ed. 196 (1875).
Plaintiff cites cases in which it was held that national banks are subject to state laws, but in those cases the particular statutes in question expressly incorporated state law. Some sections of the National Bank Act do expressly incorporate state law. See, e. g., 12 U.S.C. § 36(c) (authorizing national banks to establish and operate branch banks only to the extent state banks are so allowed); 12 U.S.C. § 92a(a) (national banks not allowed to act as trustees, executors, etc., when to do so would be in contravention of state or local law); 12 U.S.C. § 85 (interest rates charged on loans determined by state law); See also Marquette Nat. Bank of Minneapolis v. First of Omaha Services Corp., ___ U.S. ___, 99 S.Ct. 540, 58 L.Ed.2d 534 (1978); First Nat. Bank of Logan v. Walker Bank, 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966); New Hampshire Bankers Ass'n v. Nelson, 336 F.Supp. 1330 (D.N.H.), aff'd, 460 F.2d 307 (1st Cir.) (per curiam), cert. denied, 409 U.S. 1001, 93 S.Ct. 320, 34 L.Ed.2d 262 (1972).
12 U.S.C. § 30 contains no reference to state law. Congress, in an area in which it has paramount authority, Davis v. Elmira Savings Bank, supra, has specifically provided in Section 30 that any name changes in national banks are to be approved by the Comptroller of the Currency. By making reference to state law in other sections of the National Bank Act and omitting all such reference in Section 30, Congress has signalled its clear intent that Section 30 is meant to be pre-emptive. See Ramapo Bank v. Camp, 425 F.2d 333, 344 (3d Cir.), cert. denied, 400 U.S. 828, 91 S.Ct. 57, 27 L.Ed.2d 58 (1970), where the court, using the same rationale, found the main office relocation provisions of Section 30 to be pre-emptive. There is a sound reason for this, because to allow a state cause of action would invite the possibility of a result inconsistent with the Comptroller's determination, which would defeat one of the goals of the National Bank Act, which is uniformity of regulation of national banks.
The fact that a state statute or regulation is not involved here does not change the result. If a field of law is federally pre-empted, state common law as well as state statutory and regulatory law are displaced. See Old Dominion Branch No. 496, Nat. Ass'n of Letter Carriers, AFL-CIO v. Austin, 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974) (state common law libel action precluded by federal pre-emption in area of labor relations); Van Reed v. People's Nat. Bank, 198 U.S. 554, 557, 25 S.Ct. 775, 776, 49 L.Ed. 1161 (1905) (national banks "are not to be interfered with by state legislative or judicial action, . ..") (emphasis added).
It is the holding of this court that the regulation of any name changes of national banks is pre-empted by federal law and a state action to enjoin the name change, grounded on the state common law of unfair competition, will not lie. The defendants' motion to dismiss is well taken.
IT IS ORDERED that judgment be entered dismissing the case.
NOTES
[1] A more complete history of this case can be found in State of North Dakota v. Merchants Nat. Bank and Trust Co., 579 F.2d 1112 (8th Cir. 1978).
[2] Congress has the power to create and regulate a system of national banks, pursuant to the Commerce Clause and the Necessary and Proper Clause. See McCulloch v. Maryland, 17 U.S. (4 Wheat) 316, 4 L.Ed. 579 (1819).