**FIRST NATIONAL BANK OF ABERDEEN, and First National Bank of Aberdeen, Redfield Branch, a National Banking Corporation, Plaintiff,**

v.

**ABERDEEN NATIONAL BANK, also using name First Bank (N.A.) Aberdeen, and the Spink County Branch of the Aberdeen National Bank, also using name First Bank (N.A.) Redfield, Defendant.**

**CIV 79–1013.**

United States District Court,
D. South Dakota, N. D.

June 15, 1979.

Lloyd C. Richardson, Jr., of Richardson, Groseclose, Kornmann & Wyly, Aberdeen, S. D., for plaintiff.

R. D. Miller, Aberdeen, S. D., and David A. Ranheim, of Dorsey, Windhorst, Hannaford, Whitney & Halladay, Minneapolis, Minn., for defendant.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

The plaintiff has filed a motion to remand the case to State Circuit Court and the defendant has filed a motion to dismiss pursuant to F.R.Civ.P. 12(b)(6). For reasons set out in this opinion, the plaintiff's motion to remand the case to State Circuit Court is denied and the defendant's motion to dismiss is granted.

## WHO'S ON FIRST

This dispute arises out of the use of the word "First" in the name of the defendant's bank. The defendant, Aberdeen National Bank, as will be more fully explained later, has changed its name to First Bank (N.A.) Aberdeen. The Spink County Branch of the Aberdeen National Bank has also changed its name to First Bank (N.A.) Redfield.

The defendant is a nationally chartered bank, governed by the National Bank Act, 12 U.S.C. Section 1 et seq. It has provided banking services to the communities of Aberdeen, South Dakota, and Redfield, South Dakota, for numerous years.

The plaintiff is also a nationally chartered bank, governed by the National Bank Act. The plaintiff has also provided banking services to the communities of Aberdeen and Redfield. The plaintiff has used the name First National Bank of Aberdeen for a number of years; herein lies the problem. Because the defendant has changed its name to include the word "First", the plaintiff contends that customers will be confused and the goodwill which the plaintiff has built up over the years will be drained off by the defendant "stealing First."

The plaintiff claims that the defendant's name change is in violation of state law, specifically S.D.C.L. 47–2–38 (1967) and S.D.C.L. 51–17–2 (1970). On the other hand, the defendant maintains that name changes of national banks are controlled by federal law, in this case the National Bank Act and regulations promulgated thereunder. In defending its position, the defendant points to the fact that it followed the federal statutes and regulations in making its application for name change to the Comptroller of the Currency.

On January 24, 1978, the defendant sent a letter to the Regional Administrator of National Banks for the Ninth Region. The Regional Administrator acknowledged receipt of that application on January 27, 1978, and the application was filed on the same day. Sometime during the week of January 29, 1978, the Regional Administrator of National Banks notified the plaintiff of defendant's name change pursuant to 12 C.F.R. Section 5.2(c). The notification took place by mailing the plaintiff a copy of the Regional Administrator's weekly bulletin detailing applications received that week by the Regional Administrator's office.

On February 8, 1978, notice of defendant's name change application was published in the Aberdeen American News. On February 9, 1978, notice of the defendant's name change application was published in The Redfield Press. By these notices, the plaintiff was informed of its right to oppose the defendant's application and its right to demand an administrative hearing before the Comptroller's office. The plaintiff did not exercise this right and so the Regional Administrator of National Banks granted preliminary approval of the defendant's name change on December 8, 1978. On April 6, 1979, the Aberdeen National Bank changed its name to First Bank (N.A.).

The plaintiff filed an action in the State Circuit Court on April 10, 1979, seeking an injunction to prevent the defendant from using the word "First" in its name. The defendant filed a petition to remove the case from Circuit Court on April 17, 1979. The plaintiff now seeks to have the case remanded to Circuit Court.

There are two questions to be answered here. First, whether this case should be remanded? Second, whether the defendant's motion to dismiss should be granted? Obviously, if the first question is answered affirmatively there is no need for this court to delve into the second question.

## PLAYING IN THE BIG LEAGUES

■ Removal is one of the swampy areas of the law. At the outset the court notes that it is clear that a national bank may not claim original or removal jurisdiction solely on the basis of being a national bank. *Mercantile National Bank at Dallas v. Langdeau*, 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963); *Burns v. American National Bank & Trust Co.*, 479 F.2d 26 (8th Cir. 1973), *cert. denied*, 429 U.S. 1062, 97 S.Ct. 786, 50 L.Ed.2d 778 (1977).

First, the court must look to the statute for guidance. Since federal courts are courts of limited jurisdiction, we must carefully scrutinize the jurisdictional grant which Congress has provided. The removal statute, 28 U.S.C. Section 1441 (1976), states in pertinent part:

(a) Except as otherwise expressly provided by Act of Congress, any civil action

brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States, shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

.     .     .     .     .

The removal statute is obviously keyed to original federal jurisdiction. In this case the defendants claim that they fall within the purview of several jurisdictional statutes.

The first of those statutes is 28 U.S.C. Section 1331(a) (1976), which is as follows:

(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States except that no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.

■ The two federal jurisdictional statutes quoted above bring to mind some perplexing problems. First, what does the term "arising under" mean? Second, what information may be used to determine if the right is one "arising under" federal law?

In answering both of those questions, it must be conceded that *Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936) provides some of the component principles. Those rules of law, as they apply to this case are:

1. A right or immunity created by a federal law must be an essential element of the plaintiff's cause of action.

2. The federal nature of the controversy must be disclosed by well-pleaded allegations, unaided by responsive pleadings.

*See also, Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1974); *Skelly Oil Co. v. Phillips Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); *Home Federal S. & L. Ass'n. v. Ins. Dep't. of Iowa*, 571 F.2d 423 (8th Cir. 1978).

With respect to the first question, regarding the term "arising under", 13 Wright, Miller & Cooper, Federal Practice and Procedure, Section 3562, at 414, states:

Rather than attempting a test it might be wiser simply to recognize that "the existing doctrines as to when a case raises a federal question are neither analytical nor entirely logical," and that in the unusual case in which there is a debatable issue about federal question jurisdiction, pragmatic considerations must be taken into account.

■ The plaintiff has argued that this controversy is not one which arises under the laws of the United States. In making that argument the plaintiff relies on several cases, in particular *Marquette National Bank of Minneapolis v. First National Bank of Omaha*, 422 F.Supp. 1346 (D.Minn.1976).

There the plaintiff had commenced an action in state court against a non-resident national bank, a Nebraska corporation authorized to do business in Minnesota, and the Credit Bureau of St. Paul, a Minnesota corporation. The action was removed to federal court, and the case before the court was a motion to remand. The complaint alleged a cause of action in five counts. The first alleged that the two foreign corporations had induced Minnesota residents to contract with the Omaha bank's credit card program and that the Omaha bank assessed finance charges in excess of those allowed by the Minnesota Bank Credit Card Act. The remaining counts alleged conspiracy to violate that Act, violation of the Minnesota Deceptive Trade Practices Act, conspiracy to violate that Act, and tortious

interference with plaintiff's contractual relations with its customers. In opposing the motion to remand, the defendants took the position that the federal court had jurisdiction because plaintiff's allegation concerning an illegal rate of interest must be construed as an allegation that the federal statute establishing legal interest rates for national banks, 12 U.S.C. Section 85 (1974), had been violated. The defendants argued that this statute preempted state regulations and that any claim that an illegal interest rate had been charged could be litigated only as a claim arising under federal statute. Judge Alsop rejected their argument stating: "Federal preemption may offer a valid defense to state law claim, but preemption does not convert a state law claim to which preemption is a defense into a claim arising under federal law." *Marquette, supra,* at 1352.

In relying on this language the plaintiff overlooks other parts of that same opinion wherein Judge Alsop stated: "If the cause of action alleging the charging of excessive interest rates actually set forth claims which arise only under 12 U.S.C. Section 85, removal was clearly in order; . . . ." *Marquette, supra,* at 1351. That case is clearly distinguishable from the present one because of the differences in the statutes involved. 12 U.S.C. Section 85 (1974) provides that a bank may charge:

> interest at the rate allowed by the laws of the State . . . where the bank is located, or at a rate of 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, . . . except that where by the laws of any State a different rate is limited for banks organized under State laws, the rate so limited shall be allowed for associations organized or existing in any such State under this chapter.

Section 85 expressly incorporates State law. There is no such language in 12 U.S.C. Section 30 (1974). Section 30 states that a national banking association may change its name with the approval of the Comptroller of the Currency. No mention is made that a State official can or must approve the name change. Section 30 is clearly different from Section 85; therefore, the rationale of *Marquette* is distinguishable.

The plaintiff also contends that *State of North Dakota v. Merchants National Bank & Trust Co.,* 579 F.2d 1112 (8th Cir. 1978), supports its position. However, it overlooks key parts of that opinion which indicate that the Eighth Circuit Court did not specifically state that a state common law issue was present where a bank had changed its name so that it was similar to another bank's name. The court stated: "we conclude that a cause of action *may have been stated* under the common law of North Dakota." (emphasis added) *Merchants, supra,* at 1114. The court also stated: "We express no views on the jurisdictional question of preemption of state law by the National Bank Act." *Merchants, supra,* at 1115. The case was remanded for determination of the issues not considered by the district court. On the remand, in *State of North Dakota v. Merchants National Bank & Trust Co.,* 466 F.Supp. 953 (D.N.D.1979), Judge Benson considered those issues. The court determined that the National Bank Act, specifically Section 30, preempts state law.

A similar case, *First Federal Savings & Loan Association of Jackson County v. First Federal Savings & Loan Association of Huntsville,* 446 F.Supp. 210 (N.D.Ala.1978), involved allegations of violations of the state common law doctrine of unfair competition leveled by one savings and loan association against the other because of the confusing similarity of names. The defendant association removed the action from state court to federal court pursuant to 28 U.S.C. Section 1441 (1976). On plaintiff's motion to remand, the court held:

> The (Federal Home Loan Bank) Board has prescribed regulations for obtaining its written approval of a branch office. 12 C.F.R. Sec. 545.14. In addition, the Board has included in its regulations "Statements of Policy." In these statements, the Board has recognized the very problem illustrated by the controversy

here—possible public confusion and unfair competition when an approved branch office brings into conflict two federal associations having similar names in the same market area. Section 556.5(d) of 12 C.F.R. reads in relevant part as follows:

"(d) Name of branch office . . . In order to minimize public confusion and prevent unfair competition, the Board may condition its approval of an application to establish or maintain a branch office . . . to be located within the market area of another Federal association having a name similar to the name of the parent association of such branch office . . . and the manner in which the presence of such branch office . . . in such area may be advertised or made known to the public."

It seems clear that there has been federal preemption in the field of unfair competition between two federal associations from similarity of names. The claims of First of Jackson must be tested therefore under federal law, either the Board's regulations, or its conditions, or federal common law. * * * Removal was therefore properly based on original jurisdiction under 28 U.S.C. Sec. 1337.

*First Federal Savings & Loan Association, supra,* at 212.

In spite of the numerous cases which plaintiff believes hold differently, it is the belief of this court that the present controversy can be said to be one arising under federal law.

With respect to the second question, where can this court look to see if the right is one "arising under" . . . the laws of the United States, courts seem to agree that the court reviewing the removal petition and determining whether it has jurisdiction can look no further than the plaintiff's complaint. Within the boundaries of that pleading the court must find that the right over which the controversy has been initiated is one which arises under the laws of the United States. Specifically, the court in *Marquette National Bank of Min-*

neapolis v. First National Bank of Omaha, 422 F.Supp. 1346, 1351 (D.Minn.1976), stated: "The traditional rule in removal proceedings prohibits the court from looking outside the plaintiff's own complaint to determine whether or not a suit arises under federal law." Justice Cardozo writing for the Court in *Gully v. First National Bank,* 299 U.S. 109, 113, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 held that: "A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto and the controversy must be disclosed upon the fact of the complaint, unaided by the answer or the petition for removal."

However, that oversimplification has caused some confusion. 14 Wright, Miller & Cooper, Federal Practice and Procedure Section 3722, at 567–69 (1976), states the rule as follows:

(I)n many contexts plaintiff's claim may be one that is exclusively governed by federal law, so that the plaintiff necessarily is stating a federal cause of action, whether he chooses to articulate it that way or not. If the only remedy available to plaintiff is federal, because of preemption or otherwise, and the state court necessarily must look to federal law in passing on the claim, the case is removable regardless of what is in the pleading. (Footnotes omitted).

This rule has been applied in actions seeking to enjoin establishment of a branch of a national bank allegedly illegal under state law, because Section 36 of the National Bank Act occupies the field of branching of national banks to the exclusion of state law. *North Davis Bank v. First National Bank of Layton,* 457 F.2d 820 (10th Cir. 1972). Furthermore, Judge Benson held in *Teamsters Local No. 116 v. Fargo-Moorhead Automobile Dealers Association,* 459 F.Supp. 558, 560 (D.N.D.1978):

When there is no state cause of action, however, because plaintiff's claim is exclusively governed by federal law, the action is removable regardless of what is in the pleading. If, for example, the area of law in question is preempted by federal legislation, plaintiff is necessarily stat-

ing a federal cause of action even though he purports to rely on state law. * * * The action could have been brought in federal court because there would be original jurisdiction. Removal, therefore, would be proper.

In the present case, regardless of the plaintiff's interpretation of the complaint, the cause of action stated does arise under federal law.

■ In order for this court to obtain jurisdiction under 28 U.S.C. Section 1331 (1976) the amount in controversy must be greater than $10,000. This amount is usually determined by the so-called "legal certainty" test. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). In declaratory or injunctive relief actions this amount is determined by the value of the right that plaintiff seeks to protect. *Wheless v. City of St. Louis*, 180 U.S. 379, 21 S.Ct. 402, 45 L.Ed. 583 (1901); *Hedberg v. State Farm Mutual Insurance Co.*, 350 F.2d 924 (8th Cir. 1965). This court is of the opinion that the plaintiff's claims of impending monetary loss are of a magnitude to fulfill this prerequisite for jurisdiction in this court.

■ The defendant claims that this court also has jurisdiction of the case by virtue of 28 U.S.C. Section 1337 (1978). The test for determining whether or not the action arises under an Act of Congress regarding commerce, however, brings into play the same considerations involved in determining whether or not a case is one arising under federal law under Section 1331. Merely because an Act of Congress regulating commerce may be involved in the case is not enough to raise federal court jurisdiction. *Eickof Construction Co. v. Great Northern Railway Co.*, 291 F.Supp. 44 (D.Minn.1968). The plaintiff's claim must arise under that Act in the sense that the Act supplies not only the source of the authority to establish that right, but also that it establishes the federal nature of the right.

■ The question is whether 12 U.S.C. Section 30 (1976) comes within the classification of an Act of Congress regulating commerce. The statute reads in pertinent part:

Any national banking association, with the approval of the Comptroller of the Currency, may change its name . . .

There does not seem to be any conceivable reason for this provision except to regulate commerce conducted by national banks. An action which is basically concerned with the manner and means by which a national bank changes its name invades an area which is specifically limited, regulated and treated by the National Bank Act and must be determined solely by the construction of effect given to that law. An action which calls to question activity taken pursuant to that Act derives its substance from that Act, arises under an Act of Congress.

It would appear that the court in *First Federal, supra*, based its jurisdiction on 28 U.S.C. Section 1337 (1978). We have already quoted extensively from that opinion but parts of it are particularly appropriate here.

The source of federal power is in any event the commerce clause of the Constitution; not necessarily is it the "exclusive source" but "a significant one." *Murphy v. Colonial Federal S. & L. Assn.*, 388 F.2d 609, 615 (2d Cir. 1967) (Friendly, J.) Removal was therefore properly based on original jurisdiction under 28 U.S.C. Sec. 1337.

■ The defendants also claim that 28 U.S.C. Section 1442(a)(1) is an additional grant of jurisdiction. This court disagrees. That statute reads:

(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension

or punishment of criminals or the collection of the revenue.

The application of this statute is limited to instances involving federal officials acting within the scope and domain of their official duties. *Willingham v. Morgan*, 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969). The defendant is not a person acting under the Comptroller of the Currency or under the color of that office. The Comptroller has approved the name change, but approval of the action should not be confused with the act itself. They are entirely different concepts. Virtually all business conducted by a national bank is pursuant to either authority or approval of the Comptroller or his agent. To extend the removal statute as defendant proposes would not only open the doors of the federal court to almost any action based upon the activity of a national bank, but would, most likely, make the Comptroller of the Currency a necessary party. There is no basis in law for such proposition.

### STRIKE THREE

■ Having decided that this court has jurisdiction, the court turns its attention to the defendant's motion to dismiss. The ultimate question to be addressed in this motion to dismiss is whether federal law has preempted state law in the area of name changes for banks.

The defendant's motion to dismiss was filed pursuant to F.R.Civ.P. 12(b)(6). In accordance with that rule, the court has not considered anything other than the pleadings.

As Judge Benson noted in *State of North Dakota v. Merchants National Bank & Trust Co.*, 466 F.Supp. 953 (D.N.D.1979), the question of whether there is federal preemption of name changes of national banks is not one which has been well litigated. In fact, Judge Benson commented that *Merchants* was a case of first impression.

This court agrees with the conclusion that Judge Benson reached in *Merchants*. Thus, for all of the reasons stated in that opinion it is the holding of this court that the regulation of any name changes of national banks is preempted by federal law and a state action to enjoin the name change will not lie. The defendant's motion to dismiss is granted.

IT IS ORDERED that judgment be entered dismissing the case.