[No. 4562–5–III. Division Three. December 1, 1981.]

PIONEER FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION, *Appellant,* v. PIONEER NATIONAL BANK, *Respondent.*

*Leo C. Kendrick, Gavin, Robinson, Kendrick, Redman &*

*Mays, Orland M. Christensen, James W. Anable,* and *Christensen, O'Connor, Johnson & Kindness,* for appellant.

*Don W. Schussler, Thomas A. Prediletto,* and *Nashem, Prediletto, Schussler & Halpin,* for respondent.

GREEN, J.—This appeal involves a trade name infringement action between two federally chartered banks. The dispositive issue is whether the National Banking Act (NBA), which requires the name adopted by a national bank to be approved by the Comptroller of the Currency, preempts state unfair competition and trademark infringement laws.

In 1973, plaintiff obtained approval from the Federal Home Loan Bank Board to operate under the name "Pioneer First Federal Savings and Loan Association".[1] In early 1976, defendant published in a Yakima newspaper its intent to organize as a national bank under Title 12 of the United States Code and that one of its proposed names was "Pioneer National Bank". In July 1976, the Comptroller of Currency approved organization of the new bank under the name "Pioneer National Bank", objections having been filed by two banks to other proposed names.

In March 1977, plaintiff notified defendant it claimed infringement of its trade name and service mark by the use of the word "Pioneer" in defendant's name. Nevertheless, defendant opened for business on July 11, 1977 and began advertising under the name Pioneer National Bank. Plaintiff then commenced this action seeking to enjoin defendant's use of the word "Pioneer" alleging trademark infringement, RCW 19.77.140, and unfair competition, RCW 19.86.020 and .090, under state law, and violation of the federal trademark act, 15 U.S.C. § 1125(a). Defendant moved for summary judgment on the basis of federal preemption, which was denied. Following a bench trial, the court entered judgment enjoining the use of the word "Pio-

---

[1]Plaintiff had been operating for 40 years under the name "First Federal Savings and Loan Association of Everett, Washington".

neer" unless preceded by some other word approved by the court and directed that registration of defendant's present name with any state or federal agency be cancelled. Both parties appeal from this judgment. We reach only the preemption question.

██ The rule for determining whether preemption exists under the NBA is well established:

> National banks are instrumentalities of the Federal government, created for a public purpose, and as such necessarily subject to the paramount authority of the United States. It follows that an attempt, by a State, to define their duties or control the conduct of their affairs is absolutely void, wherever [1] such attempted exercise of authority expressly conflicts with the laws of the United States, and [2] either frustrates the purpose of the national legislation or impairs the efficiency of these agencies of the Federal government to discharge the duties, for the performance of which they were created. These principles are axiomatic, and are sanctioned by the repeated adjudications of this court.

*Davis v. Elmira Sav. Bank,* 161 U.S. 275, 283, 40 L. Ed. 700, 16 S. Ct. 502, 503 (1896); *Easton v. Iowa,* 188 U.S. 220, 47 L. Ed. 452, 23 S. Ct. 288, 293 (1903); *First Nat'l Bank v. Missouri ex rel. Barrett,* 263 U.S. 640, 68 L. Ed. 486, 44 S. Ct. 213, 215 (1924); *Detonics ".45" Assocs. v. Bank of Cal.,* 30 Wn. App. 179, 633 P.2d 114 (1981).

First, do the Washington statutes governing unfair competition and trademark infringement conflict with the NBA? We answer in the affirmative.

With respect to adoption of a name, the NBA provides:

> The persons uniting to form such an association [a national bank] shall, under their hands, make an organization certificate, which shall specifically state:
> First. The name assumed by such association; which name shall include the word "national" and be subject to the approval of the Comptroller of the Currency.

12 U.S.C.A. § 22 (Supp. 1981). Plaintiff argues this section addresses only the requirements for an organization certificate. It is urged nothing in the NBA shows a congressional intent to supersede state unfair competition and trademark

infringement laws which apply to the tortious use of a name. It relies upon *Middletown Trust Co. v. Middletown Nat'l Bank,* 110 Conn. 13, 147 A. 22 (1929), and *First Nat'l Bank v. First Wyo. Sav. & Loan Ass'n,* 592 P.2d 697 (Wyo. 1979). It is our view, however, that the body of federal law which has developed under the NBA, as well as the NBA itself, dictates that such state laws be preempted.

■ Congress need not expressly state that approval of a name to be used by a national bank is within the comptroller's exclusive authority. An intent to preempt the field may be inferred where

> [t]he scheme of federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it. . . . Or the Act of Congress . . . touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. . . . Likewise, the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose. . . . Or the state policy may produce a result inconsistent with the objective of the federal statute.

(Citations omitted.) *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 91 L. Ed. 1447, 67 S. Ct. 1146, 1152 (1947); *North Dakota v. Merchants Nat'l Bank & Trust Co.,* 466 F. Supp. 953 (D.N.D. 1979).

■ In *Cook County Nat'l Bank v. United States,* 107 U.S. 445, 448, 27 L. Ed. 537, 2 S. Ct. 561, 564 (1883), the court commented on the comprehensive nature of the NBA:

> We consider that act as constituting by itself a complete system for the establishment and government of national banks, prescribing the manner in which they may be formed, . . . and the manner . . . in which their affairs shall be wound up . . . Everything essential to the formation of the banks . . . [is] fully provided for, as in a separate code by itself, neither limited nor enlarged by other statutory provisions . . .

*See also North Dakota v. Merchants Nat'l Bank & Trust Co., supra* at 954. Since the trial court's ruling in this case, Division One of this court has recognized the pervasive

nature of the national banking system:

> Congress has persuasive reasons for maintaining exclusive control over the national banks and has unmistakenly decided to occupy the field.

*Detonics ".45" Assocs. v. Bank of Cal., supra* at 182.

Congressional intent that 12 U.S.C. § 22 preempt state laws involving use of a particular name by a national bank may be found by comparing that section with other sections of the NBA. Section 30, covering changes of name and the relocation of a national bank's main office, contains language similar to section 22:

> [N]o change of name or location shall be valid until the Comptroller shall have issued his certificate of approval of the same.

12 U.S.C. § 30. There is no reference to state law in either of these two sections. On the other hand, when state law was intended to be involved, Congress clearly expressed itself. For example, 12 U.S.C. § 36 specifically requires authorization under state law in addition to approval by the comptroller to retain, establish and operate a branch bank. In *Traverse City State Bank v. Empire Nat'l Bank,* 228 F. Supp. 984, 992 (W.D. Mich. 1964), the court compared the relocation of a bank's main office under section 30 with section 36, stating:

> It was apparently the intent of Congress *not* to limit the relocation of main offices of national banking associations by reference to state banking laws, since there is no such limitation. . . .
>
> If we were to hold, as plaintiffs urge us to do, we would write into Section 30 of the National Banking Act that which Congress decided not to include in the Act. This court would thus be legislating and usurping the powers of Congress.

*See also Ramapo Bank v. Camp,* 425 F.2d 333 (3d Cir.), *cert. denied,* 400 U.S. 828, 27 L. Ed. 2d 58, 91 S. Ct. 57 (1970); *Marion Nat'l Bank v. Van Buren Bank,* 418 F.2d 121 (7th Cir. 1969); *North Dakota v. Merchants Nat'l Bank & Trust Co., supra.* This analysis was also applied to the change of a national bank's name under section 30, *see*

*First Nat'l Bank v. Aberdeen Nat'l Bank*, 471 F. Supp. 460 (D.S.D. 1979), *rev'd on other grounds*, 627 F.2d 843, 845 (8th Cir. 1980), and to the initial selection of a name. *Franklin Nat'l Bank v. New York*, 347 U.S. 373, 378, 98 L. Ed. 767, 74 S. Ct. 550, 554 (1954). In *Franklin Nat'l Bank*, the court held national banks are impliedly authorized to use the word "savings" in their name even though use of that term is forbidden by a state statute, reasoning there was

> no indication that Congress intended to make this phase of national banking subject to local restrictions, as it has done by express language in several other instances.

(Footnote omitted.) Impliedly then, Congress, by omitting reference to state law in sections 22 and 30, intended the comptroller's authority to be paramount in the approval of a national bank's name.

Further, the preemptive effect of section 22 extends to other state legislation that impact national banks, *e.g.*, unfair competition and trademark infringement:

> "If Congress have a constitutional power to regulate a particular subject, and they do actually regulate it in a given manner, and in a certain form, it cannot be that state legislatures have a right to interfere, and, as it were, by way of complement to the legislation of Congress, to prescribe additional regulations, and what they may deem auxiliary provisions for the same purpose. In such case, the legislation of Congress, in what it does prescribe, manifestly indicates that it does not intend that there shall be any farther legislation to act upon the subject matter. Its silence as to what it does not do, is as expressive of what its intention is as the direct provisions made by it."

*Easton v. Iowa, supra* at 237, quoting from *Prigg v. Pennsylvania*, 41 U.S. (16 Pet.) 539, 10 L. Ed. 1060 (1842).

Second, do state laws permitting a challenge to the use of a name by a national bank impair the comptroller's efficiency in carrying out his duties under the NBA? We also answer this question in the affirmative.

■ It is well established the comptroller has broad dis-

cretion to implement the NBA. *See Camp v. Pitts,* 411 U.S. 138, 36 L. Ed. 2d 106, 93 S. Ct. 1241 (1973); *Ramapo Bank v. Camp, supra; Merchants & Planters Bank v. Smith,* 380 F. Supp. 354 (E.D. Ark. 1974); *Marion Nat'l Bank v. Van Buren Bank, supra; Webster Groves Trust Co. v. Saxon,* 370 F.2d 381 (8th Cir. 1966). This discretion extends to approving names of national banks. *See, e.g., Apfel v. Mellon,* 33 F.2d 805, 806–07 (D.C. Cir.), *cert. denied,* 280 U.S. 585, 74 L. Ed. 634, 50 S. Ct. 35 (1929).

Sections 26 and 27 of the NBA provide broad guidelines for approving or disapproving certification of national banks. The comptroller's decision to issue a certificate authorizing a bank to commence operation may be made on the basis of any "facts which may come to [his] knowledge . . ., whether by means of a special commission appointed by him . . ., or otherwise, . . ." 12 U.S.C. § 27. The comptroller has issued regulations that enable him to

> reach informed decisions with respect to applications to charter national banks, . . . These procedures provide a method by which all persons interested in the subject matter of such applications may present their views.

12 C.F.R. § 5.1 (1976).[2] The regulations provide that an applicant must publish

> in a newspaper of general circulation in the community in which . . . the applicant proposes to engage in business a notice *containing the name of the applicant . . .,* the subject matter of the application, and the date upon which the application was filed.

(Italics ours.) 12 C.F.R. § 5.2 (1976). Section 5.4 of 12 C.F.R. provides for hearing upon written request, at the discretion of the comptroller.[3]

---

[2]Section 5 was amended in 1981 and now contains explicit standards for approving applications for national banks.

[3]Plaintiff argues the procedures adopted by the comptroller violate due process because a hearing is not required. This argument has no merit. First, it is not supported by citation of authority. Second, the procedures used were expressly approved in *Camp v. Pitts,* 411 U.S. 138, 36 L. Ed. 2d 106, 93 S. Ct. 1241 (1973), and have been consistently recognized as being valid. *First Nat'l Bank v. Saxon,*

It is manifest the purpose of these procedures is to assure that a proposed name does not conflict with that of an existing bank. A state action for unfair competition and trademark infringement based upon that same standard would effectively nullify the comptroller's determination.[4] As stated in *Garner v. Teamsters Local 776*, 346 U.S. 485, 490–91, 98 L. Ed. 228, 74 S. Ct. 161 (1953):

> A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law.

In *North Dakota v. Merchants Nat'l Bank & Trust Co., supra* at 955, the court held that portion of section 30 of the NBA relating to change of name preempted state law and stated:

> [To] allow a state cause of action would invite the possibility of a result inconsistent with the Comptroller's determination, which would defeat one of the goals of the National Bank Act, which is uniformity of regulation of national banks.

■ For the foregoing reasons, we hold the NBA has preempted our state law pertaining to trademark infringement and unfair competition based on the use of a name approved by the Comptroller of Currency. The federal system is the proper forum in which to resolve the issues raised between these two federally chartered banks. *See Webster Groves Trust Co. v. Saxon, supra.*

■ Finally, plaintiff argues the federal trademark act

---

352 F.2d 267 (4th Cir. 1965); *First Bank & Trust Co. v. Smith*, 509 F.2d 663 (1st Cir. 1975); *Webster Groves Trust Co. v. Saxon*, 370 F.2d 381 (8th Cir. 1966).

[4]Defendant cites a regulation relating to name changes promulgated by the comptroller which supports our analysis of the potential for conflict between state laws and the comptroller's determination. That regulation states a proposed name must be

> sufficiently dissimilar from that of any other existing or proposed unaffiliated bank or depository financial institution so as not to substantially confuse or mislead the public in a relevant market.

12 C.F.R § 5.42(b) (1981). Plaintiff points out this regulation was not in effect at the time defendant's name was approved. Our conclusion, however, is not based upon this regulation, but stems from other provisions of the NBA.

(Lanham Act, 15 U.S.C. § 1125(a)), upon which it also based its cause of action, supports its position that Congress did not intend the NBA to encompass unfair competition among federally chartered banks. Federal courts, however, have original jurisdiction over a claim under that act, 15 U.S.C. § 1121; *Natcontainer Corp. v. Continental Can Co.*, 362 F. Supp. 1094, 1100 (S.D.N.Y. 1973); *Norman M. Morris Corp. v. Weinstein*, 466 F.2d 137, 141 (5th Cir. 1972); *Iding v. Anaston*, 266 F. Supp. 1015 (N.D. Ill. 1967), and plaintiff has not cited, nor have we discovered, any case holding that a state court has concurrent jurisdiction. This issue should be resolved in the federal courts.

We hold the trial court erred when it denied defendant's motion for summary judgment.

Reversed and plaintiff's complaint is dismissed.

McINTURFF, C.J., and MUNSON, J., concur.

Reconsideration denied January 20, 1982.

Review granted by Supreme Court April 9, 1982.