[No. 48468–6.   En Banc.   February 17, 1983.]

PIONEER FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION,
*Petitioner*, v. PIONEER NATIONAL BANK,
*Respondent.*

854

*Christensen, O'Connor, Johnson & Kindness, Orland M. Christensen,* and *James W. Anable,* for petitioner.

*Nashem, Prediletto, Schussler & Halpin, Don W. Schussler,* and *Thomas A. Prediletto,* for respondent.

STAFFORD, J.—Petitioner Pioneer First Federal Savings and Loan Association (Savings & Loan) initiated this action against respondent Pioneer National Bank (Bank) to enjoin the Bank's use of the name "Pioneer." The Savings & Loan alleges violations of the Washington State Trademark Registration Act, RCW 19.77, the Washington Consumer Protection Act, RCW 19.86, and the Federal Trademark Act of 1946 (Lanham Act), 15 U.S.C. § 1125(a).

The trial court issued an injunction requiring the Bank to insert a word before "Pioneer" and restricting distinctive use of the letter "P" in its logo or other advertising. The Court of Appeals dismissed the complaint, reasoning that the federal banking law preempted Washington state unfair

competition law and further reasoning, on its own motion, that federal courts have exclusive jurisdiction over claims arising under the federal trademark laws. We hold that federal law preempts our state unfair competition law to the extent that it relates to the use of a federally approved bank name but that state courts do have jurisdiction over federal trademark claims.

Petitioner Savings & Loan has operated a federally chartered savings and loan institution for approximately 40 years with offices in Snohomish, Island and King Counties. Formerly known as "Everett First Federal Savings and Loan Association," petitioner adopted its current name in 1973 with the approval of the federal Home Loan Bank Board. The current name is registered under the Washington trademark statute, but not under corresponding federal laws. Petitioner Savings & Loan uses the word "Pioneer" extensively in its advertising.

Respondent Bank was organized in January 1976 pursuant to a federal charter granted by the Comptroller of the Currency. As required by federal law, respondent Bank published an advertisement in the local Yakima papers soliciting response to three potential names. After two of the names were challenged by other banks, respondent chose its current name. In accordance with 12 U.S.C. §§ 22 and 30, the Comptroller of the Currency approved the name "Pioneer National Bank" in July 1976.

In March 1977, petitioner Savings & Loan informed respondent Bank that use of the word "Pioneer" infringed petitioner's trade name and service mark. Four months later, respondent Bank opened for business and subsequently obtained Washington State trademark registration of the words "Pioneer National Bank". The Bank's sole market area is Yakima County.

After hearing extensive testimony from both parties, the trial court concluded that even though the likelihood of petitioner's expansion into Yakima County was remote and speculative, it was probable petitioner Savings & Loan would, at some unknown time in the future, expand its

operation into parts of eastern Washington. The trial court also found the names "Pioneer First Federal Savings and Loan Association" and "Pioneer National Bank" would, in the same market area, be deceptively similar and potentially confusing, but that the parties were not presently competing in the same geographic market area. Based on its findings of fact, the trial court concluded petitioner Savings & Loan was entitled to injunctive relief and ordered respondent Bank to insert another word (*e.g.,* Yakima) before the word "Pioneer". The injunction also prohibited respondent's use of the letter "P" in a distinctive way in advertising. Both parties appealed the trial court's ruling.

Petitioner Savings & Loan challenged the limited scope of the injunction as well as the failure of the trial court to grant attorneys' fees as authorized by RCW 19.86.090. Respondent Bank challenged the trial court's denial of summary judgment on the issue of federal preemption and its dismissal of the equitable defense of laches. Agreeing with the Bank's contention that federal banking law preempted state court determination of an unfair competition claim, the Court of Appeals found it unnecessary to reach other issues. The Court of Appeals further held, sua sponte, that a federal court was the only proper forum for a federal trademark claim.

I

The dispositive issue in this case is whether regulatory authority given to the Comptroller of the Currency under sections 22 and 30 of the National Banking Act (NBA) preempts application of state unfair competition and trademark laws.

The doctrine of preemption has it roots in the constitutional maxim that the laws of the United States are the supreme law of the land. U.S. Const. art. 6, cl. 2. Our court has followed Supreme Court precedent in declaring that a federal enactment will preempt state statutory and common law if (1) "the federal statute clearly evinces a

congressional *intent* to preempt state law; *or* (2) [if] 'The
. . . *conflict* [between the two acts] is so "direct and posi-
tive" that the two acts cannot "be reconciled or consistently
stand together"' . . . and the reviewing court can therefore
infer a congressional purpose to preempt state law". (Italics
ours.) *State v. Williams,* 94 Wn.2d 531, 538, 617 P.2d 1012
(1980).

Using the *Williams* standard, the Court of Appeals found
both a congressional intent to "occupy the field" and a
conflict between federal banking law and state unfair com-
petition law. We disagree with the Court of Appeals finding
of congressional intent but do find a preemptive conflict
between federal and state laws. Because of the complexity
of federal preemption law and the ease with which congres-
sional intent may be confused with actual conflict, we will
discuss the two concepts separately.

## A
### INTENT

The Court of Appeals based its finding of congressional
intent on two considerations: first, the pervasiveness of
national bank regulation; and second, the omission of any
reference to state law in section 30 of the NBA.

With regard to the comprehensive nature of the NBA,
the Court of Appeals relied on *Rice v. Santa Fe Elevator
Corp.,* 331 U.S. 218, 91 L. Ed. 1447, 67 S. Ct. 1146 (1947).
In *Rice* the Court declared that congressional intent may be
inferred where "[t]he scheme of federal regulation may be
so pervasive as to make reasonable the inference that Con-
gress left no room for the States to supplement it". *Rice,* at
230. The Court of Appeals further supported its inference
of intent by looking to *Detonics ".45" Assocs. v. Bank of
Cal.,* 30 Wn. App. 179, 633 P.2d 114 (1981), which held, at
page 182, that "Congress has persuasive reasons for main-
taining exclusive control over the national banks and has
unmistakenly decided to occupy the field".

The Court of Appeals reliance on the decision in
*Detonics* is questionable as this court recently reversed in

*Detonics ".45" Assocs. v. Bank of Cal.,* 97 Wn.2d 351, 644 P.2d 1170 (1982). After recognizing that the NBA preempts all state penalties for usury violations by a national bank, our opinion focused on whether attorneys' fees were a penalty or a cost. Underlying this court's conclusion that attorneys' fees were a cost and therefore not preempted, was a consideration of whether an award of attorneys' fees was conceptually within the realm of congressional regulation of usury law. This court in effect concluded that the two areas were separate. The Court of Appeals finding of "pervasiveness" was inappropriate in *Detonics* and likewise, inappropriate here.

The Court of Appeals reliance on *Detonics* and *Rice* is further weakened by Supreme Court precedent. A finding that Congress intended to preempt state regulation in a given field must be based on "an unambiguous congressional mandate to that effect". *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 147, 10 L. Ed. 2d 248, 83 S. Ct. 1210 (1963). Moreover, although relevant, a detailed statutory scheme may reflect "the nature and complexity of the subject" rather than an intent to preempt state law. *De Canas v. Bica,* 424 U.S. 351, 359, 47 L. Ed. 2d 43, 96 S. Ct. 933 (1976). There is no express intent in section 30 to displace state law nor are we willing to infer such an intent from the mere complexity of the federal banking law.

The Court of Appeals inference of intent from the omission of any reference to state law in section 30 is also misplaced. As noted by the Eighth Circuit in *North Dakota v. Merchants Nat'l Bank & Trust Co.,* 634 F.2d 368 (8th Cir. 1980), the only state law that is incorporated in relevant sections of the NBA is state *banking* law. The Eighth Circuit refused to infer that the failure to mention state law in section 30 implied Congress did not intend for state laws of unfair competition to apply. *Merchants,* at 376. Any inquiry as to congressional intent should begin with the assumption that "'the historic police powers of the States were not to be superseded by the Federal Act unless that

was the clear and manifest purpose of Congress'". *Ray v. ARCO*, 435 U.S. 151, 157, 55 L. Ed. 2d 179, 98 S. Ct. 988 (1978).

Given the strong presumption against finding congressional intent to preempt, we are unwilling to find such an intent here. This does not end our inquiry, however. Even though there may not be an intent to preempt, state law must nevertheless yield to federal law where there is a conflict between the two.

## B
### CONFLICT

■ The controlling rule for analyzing preemption problems under the NBA was stated by the Court in *First Nat'l Bank v. Missouri ex rel. Barrett,* 263 U.S. 640, 656, 68 L. Ed. 486, 44 S. Ct. 213 (1924):

> [N]ational banks are subject to the laws of a State in respect of their affairs unless such laws interfere with the purposes of their creation, tend to impair or destroy their efficiency as federal agencies or conflict with the paramount law of the United States.

The true question in this case is to what extent a conflict exists between the regulatory authority granted in section 30 and a determination under our own unfair competition and trademark laws. *See Merchants,* at 378.

Two state courts of other jurisdictions have addressed this question and both have reached the conclusion that state unfair competition law is *not* preempted by the NBA. *First Nat'l Bank v. First Wyo. Sav. & Loan Ass'n,* 592 P.2d 697 (Wyo. 1979); *Middletown Trust Co. v. Middletown Nat'l Bank,* 110 Conn. 13, 147 A. 22 (1929). Both courts began with an assumption that the authority of the Comptroller to approve bank names is a ministerial rather than a discretionary authority. Analogizing bank name approval to the approval of a corporation name by a Secretary of State, they concluded the Comptroller's approval of a name is not even related to a state court consideration of the subsequent tortious *use* of that name.

Petitioner Savings & Loan relies heavily on this distinction between the approval of a name and subsequent *use* of that name. According to petitioner's argument, the trial court did not undermine the Comptroller's authority by requiring respondent Bank to change its name; rather the trial court limited the way in which respondent Bank could *use* that name. This argument, though appealing, is flawed.

■ In *Merchants*, the court considered the very same argument and rejected the reasoning adopted by the Wyoming and Connecticut courts. The *Merchants* court found those cases to be based on a false premise; that is, the *Merchants* court believed the Comptroller's duty to be a discretionary one in which he must consider many different factors before issuing approval. This contention makes sense. As the *Merchants* court stated, at page 382:

> [T]he obvious reason for requiring *approval* of a name change is that Congress expected the Comptroller to compare a proposed name with those of other banks in the same area and decide whether the new name would be either identical to that of another bank or so similar that confusion would result.

The Court of Appeals used a similar rationale in the second part of its opinion to hold that a cause of action for unfair competition would "'invite the possibility of a result inconsistent with the Comptroller's determination . . .'" *Pioneer First Fed. Sav. & Loan Ass'n v. Pioneer Nat'l Bank,* 30 Wn. App. 597, 605, 637 P.2d 661 (1981). We agree.[1]

---

[1]In oral argument, petitioner urged this court to adopt the reasoning of a recent federal district court case. Preston State Bank v. Ainsworth, No. CA 30-82-0671 (N.D. Tex. Oct. 19, 1982). The Preston court acknowledged that the approval authority given to the Comptroller under sections 22 and 30 of the National Banking Act necessitates a consideration of whether a proposed name is confusing or deceptive. The court then distinguished the analysis of the Eighth Circuit Court of Appeals in *North Dakota v. Merchants Nat'l Bank & Trust Co.,* 634 F.2d 368 (8th Cir. 1980), by noting that the "substantial confusion" standard applied by the Comptroller is significantly different from the stricter "likelihood of confusion" standard required under Texas unfair competition laws. Under the Preston court's analysis, the state and federal laws are complementary rather than conflicting.

Although our State follows a "likelihood of confusion" standard for trademark

The primary purpose of the preemption doctrine is to avoid a state court decision which overturns the authority of a federal administrative agency. In determining whether to issue an injunction, the trial court heard testimony concerning the similarity and potential for confusion between the two names. The trial court also considered the relevant geographic market area of the two banks. The state court's issuance of an injunction based on unfair competition is therefore inconsistent with the Comptroller's approval of the name.

Petitioner Savings & Loan's distinction between the issuance of a name and a restriction on the *use* of that name misses the point. An evaluation of the *use* of a name necessarily entails a consideration of how confusing or deceptive that name is. The Comptroller's approval of a name gives the recipient bank justifiable reliance on its validity. The proper remedy is to appeal that approval through established federal administrative channels. *See First Nat'l Bank v. National Bank of S.D.*, 667 F.2d 708 (8th Cir. 1981).[2]

## II

Although we conclude federal law is preemptive, we find preemption only to the extent that an actual conflict exists. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware*, 414 U.S. 117, 127, 38 L. Ed. 2d 348, 94 S. Ct. 383 (1973). The Comptroller's authority under section 30 covers only the approved *name* and its general use; it does not cover all the peculiar contexts in which that name may be used.

---

infringement claims, we do not agree with the rationale of the Preston court. Application of a state standard which is stricter than its federal counterpart gives rise to the possibility that a state court will undercut federal authority. This is precisely the result precluded by the preemption doctrine. We therefore choose to follow the rationale posited by the Eighth Circuit in *Merchants* and find preemption.

[2]Petitioner contends that if state laws are preempted, it will be deprived of its rights without procedural due process. It is true that petitioner cannot get the same kind of remedy in federal court that it could under an unfair competition claim; however, this does not deprive petitioner of its due process rights.

Thus, a state court may hear a trademark infringement claim relating to the use of the name in a confusing or misleading logo, or advertisement. *See First Nat'l Bank of Aberdeen v. Aberdeen Nat'l Bank,* 627 F.2d 843 (8th Cir. 1980). If petitioner Savings & Loan emphasizes the word "Pioneer" in a peculiar way, respondent Bank could be enjoined from employing a similar logo. A trial court cannot, however, dictate that respondent Bank insert another word in its name or state generally that Pioneer cannot be used in advertising.[3]

Under our analysis the trial court had the power to enjoin respondent Bank from using the letter "P" in a distinctive way and from employing a logo similar to that used by petitioner Savings & Loan. After reviewing the trial court's findings of fact, however, we conclude that the findings do not support the injunction.

■ Under our trademark laws, it is fundamental that the protection to which a party is entitled is limited to the extent of competition in a given market area. There can be no unfair trade competition unless there is competition. *Eastern Outfitting Co. v. Manheim,* 59 Wash. 428, 110 P. 23 (1910). The trial court declared that the parties do not compete in the same market area. We are unwilling to use either the remote possibility of future competition or the very incidental business and advertising currently done by petitioner in Yakima to justify the court's injunction.

To the extent that the court's injunction conflicts with the authority of the Comptroller of the Currency, it is invalid. The rest of the injunction must fall because it is not supported by the findings of fact. We therefore affirm the result reached by the Court of Appeals with respect to the issue of preemption.

---

[3]In *Puget Sound Rendering, Inc. v. Puget Sound By–Products,* 26 Wn. App. 724, 615 P.2d 504 (1980), the Court of Appeals required the defendant to include additional language in its corporate name, reasoning it to be a less intrusive form of injunctive relief than totally precluding the use of a name. Our decision today rests on principles of preemption and should not be construed as a disapproval of this form of injunctive relief.

## III

Although the parties did not address the precise question in their briefs, the Court of Appeals held the state court was an inappropriate forum for a cause of action arising under the Federal Trademark Act, 15 U.S.C. § 1125(a).

■ Under section 1121 of the Federal Trademark Act, federal courts have *original* jurisdiction of any infringement claim arising under the act. The Court of Appeals incorrectly held that because it could find no cases holding a state court has concurrent jurisdiction, the federal court must be the exclusive forum.

*Original* is not synonymous with *exclusive.* It is well established that a grant of original jurisdiction does not necessarily deprive state courts of jurisdiction over the same matter. *See, e.g., Plaquemines Tropical Fruit Co. v. Henderson,* 170 U.S. 511, 42 L. Ed. 1126, 18 S. Ct. 685 (1898). Exclusive jurisdiction should not be presumed; it must be shown by express intent. *Claflin v. Houseman,* 93 U.S. 130, 23 L. Ed. 833 (1876).

Contrary to the Court of Appeals assertion, there are cases which specifically hold that state courts have concurrent jurisdiction over matters arising under the Federal Trademark Act. *In re Keasbey & Mattison Co.,* 160 U.S. 221, 230–31, 40 L. Ed. 402, 16 S. Ct. 273 (1895); *Oneida Comm'ty v. Oneida Game Trap Co.,* 168 A.D. 769, 154 N.Y.S. 391, 393–96 (1915); *Nelson v. J.H. Winchell & Co.,* 203 Mass. 75, 93–94, 89 N.E. 180 (1909). The law has not changed.

Further, the jurisdictional statute found at 28 U.S.C. § 1338 states:

(a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trade–marks. *Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.*

(b) The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under

the copyright, patent, plant variety protection or trademark laws.

(Italics ours.) By granting *exclusive* jurisdiction over patent and copyright cases, but expressly granting only *original* jurisdiction in trademark matters, the inevitable conclusion is that states may hear claims arising under the Federal Trademark Act.

A problem may arise in reconciling a federal trademark claim with possible preemption by the National Banking Act. One federal act does not "preempt" another; however, conflict between the two must be resolved. To the extent that a state court may examine the use of a particular name in an advertising or logo context, the federal trademark laws may be applied in state courts without undermining the authority granted to the Comptroller. *See* Preston State Bank v. Ainsworth, No. CA 30–82–0671 (N.D. Tex. Oct. 19, 1982). Because we hold the trial court's findings of fact do not support its injunction with regard to possible trademark infringement, we need not resolve the potential conflict in this case.

We affirm the Court of Appeals and dismiss petitioner's complaint. We reverse the Court of Appeals with respect to the issue of state court jurisdiction over federal trademark claims and hold that state courts have concurrent jurisdiction to hear such matters.

WILLIAMS, C.J., UTTER, BRACHTENBACH, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

Reconsideration denied April 8, 1983.