[No. 54502-2. En Banc. May 18, 1989.]

LEE T. VAN PATTEN, *Respondent*, v. CARL JENSEN, ET AL, *Petitioners*.

*Hendricks & Lewis,* by *Katherine Hendricks, O. Yale Lewis, Jr.,* and *Christine E. Dinsdale; Bogle & Gates,* by *Guy P. Michelson* and *Michael P. Mirande; Davis, Wright & Jones,* by *Bruce Lamka;* and *Helsell, Fetterman, Martin, Todd & Hokanson,* by *William A. Helsell* and *Linda M. Roubik,* for petitioners Jensen, et al.

*George, Hull & Porter, P.S.,* by *T. Dennis George, Howard I. Hall,* and *Jeffrey B. Mahan,* for petitioners King.

*Casey & Pruzan,* by *Michael A. Larson,* for respondent.

UTTER, J.—Lee Van Patten deposited funds with Westside Federal Savings and Loan (Westside) before the Federal Home Loan Bank Board (the Board) declared Westside insolvent. After the insolvency, he filed a complaint under article 12, section 12 of the Washington Constitution (section 12), seeking to recover the amount of his alleged deposit exceeding the federally insured amount of $100,000, plus accrued interest, costs and attorney fees. Petitioners, defendants below (officers, directors, employees of Westside), in two groups, moved for summary judgment and dismissal on the grounds that Westside was not a banking institution within the meaning of section 12 and that federal law preempted applying section 12. The trial court denied both motions. We granted discretionary review and reverse, holding that federal law preempts applying our constitution in this case.

Section 12 imposes personal liability on officers, directors, and certain employees of "banking institutions" for

accepting deposits knowing that the institution is insolvent or in failing circumstances. Arguing that savings and loans are not banking institutions, petitioners contend that section 12 does not apply to employees of federal savings and loan associations. Even if it did, they claim, federal law would preempt application either because Congress expressed an intent to preempt or because applying both federal and state law would result in actual conflict. Our determination is that federal law preempts applying section 12 to federal savings and loans because application would create actual conflict between state and federal law. Because we find that federal law preempts applying section 12 to federal savings and loan associations, we need not determine whether a savings and loan association is a banking institution within the meaning of section 12.

There are few significant facts. Westside was a federal institution, chartered under the Home Owners Loan Act of 1933 (HOLA), 12 U.S.C. § 1461 *et seq.* The Board regulated its operations and conducted regular examinations of its activity. In the spring of 1985, the Board issued a consent order detailing corrective measures. On August 30, 1985, the Board declared Westside insolvent and appointed a receiver, the Federal Savings and Loan Insurance Corporation (FSLIC), to administer its affairs.

■ We recently summarized the law of federal preemption, noting that congressional intent governs and may be determined in three ways: (1) federal statutes or regulations may expressly preempt state law; (2) the comprehensive nature of federal regulation may imply intent to preclude state law; and (3) actual conflict may exist either because it is impossible to comply with both state and federal law or because "the state law is an 'obstacle' to the 'full purposes and objectives of Congress.'" *Department of Labor & Indus. v. Common Carriers, Inc.,* 111 Wn.2d 586, 588, 762 P.2d 348 (1988) (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 85 L. Ed. 581, 61 S. Ct. 399 (1941)); *see also California Fed. Sav. & Loan Ass'n v. Guerra,* 479 U.S. 272, 280–81, 93 L. Ed. 2d 613, 107 S. Ct. 683 (1987); *Fidelity Fed. Sav. &*

*Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 152, 73 L. Ed. 2d 664, 102 S. Ct. 3014 (1982).

Under the 3–pronged test, analysis must begin by examining the state provision and the federal statute and regulations. Section 12 reads as follows:

Receiving Deposits by Bank After Insolvency. Any president, director, manager, cashier, or other officer of any banking institution, who shall receive or assent to the reception of deposits, after he shall have knowledge of the fact that such banking institution is insolvent or in failing circumstances, shall be individually responsible for such deposits so received.

Const. art. 12, § 12.

■ Petitioners base their argument that federal law expressly preempts section 12 on 12 C.F.R. § 545.2:

The regulations . . . are promulgated pursuant to the *plenary* and *exclusive authority* of the Board to regulate all aspects of the operations of Federal associations, as set forth in section 5(a) of the Home Owners' Loan Act of 1933, 12 U.S.C. 1464, as amended. This exercise of the Board's authority is *preemptive of any state law* purporting to address the subject of the operations of a Federal association.

(Italics ours.) If the Board has acted within its authority in promulgating regulations, the regulations preempt state law. *de la Cuesta,* at 152. Section 5(a) of HOLA describes the authority:

[T]he board is authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, *examination, operation, and regulation* of associations to be known as Federal savings and loan associations . . .

(Italics ours.) 12 U.S.C. § 1464(a).

Comments of the United States Supreme Court support a conclusion that the Board acted within its authority in promulgating these regulations. Congress enacted HOLA as "'a radical and comprehensive response to the inadequacies of the existing state systems [of saving and loan associations].'" *de la Cuesta,* at 160 (quoting *Conference of Fed.*

*Sav. & Loan Ass'ns v. Stein,* 604 F.2d 1256, 1257 (9th Cir. 1979), *aff'd,* 445 U.S. 921, 63 L. Ed. 2d 754, 100 S. Ct. 1304 (1980)). Section 5(a) of HOLA gave the Board "plenary authority" to regulate the operations of federal savings and loans; "[n]owhere [in the legislative history] is there a suggestion of any intent somehow to limit the Board's authority." *de la Cuesta,* at 164. "'[I]t would have been difficult for Congress to give the Bank Board a broader mandate.'" *de la Cuesta,* at 161 (quoting *Glendale Fed. Sav. & Loan Ass'n v. Fox,* 459 F. Supp. 903, 910 (C.D. Cal. 1978)).[1]

The Court noted that the Board's ability to preempt state requirements "may not be boundless," but found it unnecessary to determine the limits of the Board's discretion because lending practices are a "critical aspect" of operation. *de la Cuesta,* at 167. In her concurring opinion, Justice O'Connor explains that in her view, the powers granted by § 5 of HOLA do not permit the Board to "displace local laws, such as tax statutes and zoning ordinances, not directly related to savings and loan practices." *de la Cuesta,* at 172. By implication, all laws directly relating to savings and loan practices are preempted.

Although *de la Cuesta* dealt with lending practices, deposit practices are an equally critical aspect of savings and loan operations. By stating when an employee may accept deposits without civil liability, section 12 attempts to regulate operations.

Respondent contends that such a general statement of preemption will not suffice; an express statement of intent must be analogous to the statement found in *de la Cuesta.* There, the federal regulations specifically stated that due–

---

[1]Recently, the Court referred to the Board's "broad rulemaking authority" under section 5(d) of HOLA but found that the Board's regulations exceeded its authority in two respects. First, statutory language precludes conferring adjudicatory powers on the FSLIC when it operates as a receiver. Second, the regulations fail to place a "clear and reasonable time limit" on the FSLIC's consideration of claims. *Coit Independence Joint Venture v. Federal Sav. & Loan Ins. Corp.,* __ U.S. __, 103 L. Ed. 2d 602, 623, 109 S. Ct. 1361 (1989). These limitations do not affect previous comments concerning the Board's broad powers to regulate "operations" of savings and loan associations.

on–sale practices are governed "exclusively by federal law" and that federal savings and loan associations "shall not be bound by or subject to any conflicting State law . . .'" *de la Cuesta,* at 147.

However, in *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 77 L. Ed. 2d 490, 103 S. Ct. 2890 (1983), the Court found that an equally broad provision expressly preempted state laws. There, a provision in the Employment Retirement Income Security Act (ERISA) preempted "'any and all State laws insofar as they may now or hereafter relate to any employee benefit plan' covered by ERISA", subject to a few specified exemptions. *Shaw,* at 91. Focusing on the plain language, legislative history, and the structure of the Act, the Court broadly interpreted "relate to," finding that the term easily encompassed the state laws. *Shaw,* at 100. The focus then shifted to determining whether the state laws fell within the terms of the exemptions.[2]

A similar analysis may support finding express preemption in this case. However, we need not resolve that issue. This decision rests on the narrower grounds of "actual conflict."[3] The statute and regulations give the Board discretion to maintain or close an association.

A federal association may exercise all authority granted by HOLA, whether or not implemented by regulations, subject to Board interpretations in the regulations. 12 C.F.R. § 545.1. Neither HOLA nor the regulations prohibit

---

[2]*Mackey v. Lanier Collections Agency & Serv., Inc.,* __ U.S. __, 100 L. Ed. 2d 836, 108 S. Ct. 2182 (1988) should not require a different result. The Court held that ERISA preempted an anti–garnishment statute that referred specifically to ERISA, while it did not preempt a general garnishment statute. However, the Court emphasized that ERISA preempts not only plans that specifically refer to ERISA, but also those that "relate to" it in a broader sense. *Mackey,* 100 L. Ed. 2d at 845. Labeling it a close question, the Court found that Congress intended no preemption of state garnishment statutes; only specific reference to ERISA would bring a state garnishment statute within the preemptive scope of ERISA. *Mackey,* 100 L. Ed. 2d at 844–45.

[3]Although statements in *Coit Independence Joint Venture* affect an "implied intent" analysis, they have no bearing on our consideration of "actual conflict." *See* 103 L. Ed. 2d at 623.

receipt of deposits when an institution is in failing circumstances or insolvent. On the contrary, HOLA defines insolvency, 12 U.S.C. § 1464(d)(6)(A)(i), and authorizes the Board to issue cease and desist orders and to require affirmative action by employees to prevent insolvency or dissipation of funds, 12 U.S.C. § 1464(d)(3)(A). The Board has the power to declare an association insolvent and exclusive power to appoint a conservator or receiver. *See* 12 U.S.C. § 1464(d)(6)(A). Grounds for appointing a conservator or receiver include not only insolvency, but also substantial loss of assets or earnings due to "unsafe or unsound" practices. 12 U.S.C. § 1464(d)(6)(A). The Board may make rules and regulations for the reorganization, consolidation, liquidation, and dissolution of associations, and for merger with other institutions insured by FSLIC. 12 U.S.C. § 1464-(d)(11). The same provision authorizes the Board to make rules and regulations to govern conservatorships and receiverships, and it may "provide for the exercise of functions by members, directors, or officers of an association during conservatorship and receivership." 12 U.S.C. § 1464-(d)(11).

Furthermore, in order to prevent a "default," 12 U.S.C. § 1724(d), or restore an insured institution in default to normal operation, the FSLIC, as receiver and "in its sole discretion," may avert the failure by lending money to the association, by purchasing its assets, by assuming its liabilities, or by making contribution to or deposit in the association. 12 U.S.C. § 1729(f)(1). The FSLIC has the "sole discretion," "[n]otwithstanding any other provision of State or Federal law," to bring the net worth of associations up to required levels. 12 U.S.C. § 1729(f)(5)(A)(i); 12 C.F.R. § 572.1 *et seq.*

■ These provisions give the Board discretion to maintain or close an institution and to regulate the functions of officers, directors, and employees even during conservatorship or receivership. A state law imposing liability on

employees for accepting deposits if an institution is in failing circumstances conflicts with the Board's discretionary authority to continue operations.

The analysis in *Easton v. Iowa,* 188 U.S. 220, 47 L. Ed. 452, 23 S. Ct. 288 (1903) supports our conclusion. There, the Court found that federal law preempted applying a state criminal provision similar to section 12 to the president of a national bank. The Court stressed that Congress envisioned a uniform banking system independent of state regulation, that the National Bank Act provided comprehensive organization of banks, that such banks were subject to regular examination by the comptroller, and that the comptroller determined insolvency and appointed a receiver. The Court found that the Iowa code effectively forced bank employees to suspend operations: "for it is obvious, that to refuse to accept deposits would be equivalent to a cessation of business." 188 U.S. at 232.

The Court reasoned that it is preferable to allow the comptroller to follow a more flexible approach because it is difficult to determine when a bank is actually insolvent and when "affairs may take a fortunate turn." *Easton,* at 232. That reasoning is even more compelling in the present context for two reasons. First, the statute and regulations specifically give the Board a wide range of options. Second, section 12 requires refusal of deposits not only when the institution is insolvent, but also when it is "in failing circumstances." Employees' refusal to accept deposits based on their determination of failing circumstances would frustrate any efforts by the Board to stabilize an association. Respondent's arguments to the contrary are unpersuasive.

Respondent fails to convincingly distinguish *Easton* and to discredit the analysis. First, he argues that *Easton* should not apply because it was a criminal rather than civil case. However, the effect of imposing civil liability would be the same as applying the criminal statute. The Court was concerned not about the penalty, but rather about the effect of the statute on the regulation of national banks.

Second, he contends that section 12 would not force associations to close because employees could still accept insured deposits. However, section 12 does not distinguish between accepting insured or uninsured deposits. We have rejected such attempts to rewrite constitutional provisions. *See Washington State Motorcycle Dealers Ass'n v. State,* 111 Wn.2d 667, 763 P.2d 442 (1988).

Third, he asserts that a Washington appellate case, rather than *Easton,* provides the proper analysis for actual conflict. *See GMB Enters., Inc. v. B–3 Enters., Inc.,* 39 Wn. App. 678, 686–87, 695 P.2d 145, *review denied,* 103 Wn.2d 1037 (1985). That analysis essentially requires that state and federal laws have express contrary provisions. The federal and state statutes both had provisions penalizing bank employees for benefiting from loans they actively procured from borrowers. However, there was no federal counterpart for an additional state provision making it a misdemeanor for an employee to benefit from a loan he did *not* actively procure. Therefore, the court found no preemption. *GMB,* at 687.

While the result in *GMB* was appropriate, the analysis, addressing only one method of finding actual conflict, was incomplete and inappropriate for this context. Actual conflict may also be found when applying state law would frustrate federal regulatory efforts. *See Department of Labor & Indus. v. Common Carriers, Inc., supra.* Moreover, *GMB* relied in part on *Pioneer First Fed. Sav. & Loan Ass'n v. Pioneer Nat'l Bank,* 98 Wn.2d 853, 659 P.2d 481 (1983). In *Pioneer,* we found preemptive conflict between the National Banking Act and state unfair competition and trademark laws involving approval and use of a bank name. However, we found no preemption when the name was used as part of a peculiar logo or advertising; there, state trademark law prevailed. In finding preemption, we focused on the "discretionary" power of the comptroller in approving a name; the discretion naturally included consideration of the

name's use. We recognized that "[t]he primary purpose of the preemption doctrine is to avoid a state court decision which overturns the authority of a federal administrative agency." *Pioneer,* at 861.

Here, too, we must focus on the discretionary power of the federal regulator—the power to examine, regulate, and continue the operations of an ailing federal association. Section 12 would not only apply an additional safeguard for depositors, it would limit the flexibility of federal regulation. The *GMB* analysis does not apply where a state law would limit federally authorized discretion. *See de la Cuesta,* at 156.

Finally, respondent contends that federal laws do not preempt state common law, specifically common law tort claims. This court has explicitly rejected his claim that section 12 is a codification of Washington common law. *Noble v. Martin,* 191 Wash. 39, 70 P.2d 1064 (1937), *overruled on other grounds in Stenberg v. Pacific Power & Light Co.,* 104 Wn.2d 710, 709 P.2d 793 (1985).

Moreover, although some tort claims may be allowed, federal statutes may preempt state common law claims in certain situations. *See, e.g., International Bhd. of Elec. Workers v. Hechler,* 481 U.S. 851, 95 L. Ed. 2d 791, 803, 107 S. Ct. 2161 (1987) (because of the need for uniform interpretation, section 301 of the Labor Management Relations Act preempted a state tort claim); *North Dakota v. Merchants Nat'l Bank & Trust Co.,* 634 F.2d 368, 369 (8th Cir. 1980) (section 30 of the National Bank Act preempted state common law of unfair competition); *Pioneer,* 98 Wn.2d at 856 ("a federal enactment will preempt state statutory and common law" if there is actual conflict). Here, the need for a uniform approach supports preemption.

Although there is a strong presumption against finding preemption, federal law preempts applying section 12 to

employees of federal savings and loans. Therefore, we reverse the lower court and order the case dismissed.

CALLOW, C.J., and BRACHTENBACH, DOLLIVER, DORE, PEARSON, ANDERSEN, DURHAM, and SMITH, JJ., concur.